IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

PETER GAKUBA,

     Plaintiff,

v.                                                  Case No. 19-cv-1274-NJR

KARIN PANNIER and
TERRY GRISSOM, Warden,

     Defendants.

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a motion for summary judgment filed by Defendant Karin Pannier ("Pannier"), a law librarian at Vienna Correctional Center ("Vienna") (Doc. 41). Defendant Pannier argues that Plaintiff Peter Gakuba ("Gakuba"), an inmate of the Illinois Department of Corrections ("IDOC"), failed to exhaust administrative remedies prior to filing this lawsuit. Gakuba has filed a response in opposition (Doc. 83). For the reasons set forth below, Defendant Pannier's motion for summary judgment on the issue of exhaustion of administrative remedies is granted.

### BACKGROUND

On September 4, 2019, Gakuba was transferred to Vienna (Doc. 13). Within a month of being there, on October 4, 2019, Gakuba filed suit in *Gakuba v. Swells*, Case No. 19-cv-1081-SMY, alleging that Defendant Pannier and numerous others violated his Constitutional rights under 42 U.S.C. § 1983.

On November 19, 2019, *Gakuba v. Swells* was severed (Doc. 1) into separate actions, and Gakuba was ordered to inform the Court as to whether he wanted to proceed with this lawsuit (Doc. 12). On December 30, 2019, Gakuba filed the Amended Complaint (Doc. 13). After threshold review of his complaint pursuant to 28 U.S.C. § 1915A, Gakuba was permitted to proceed on the following claim:

> Count III:   First and/or Fourteenth Amendment access to courts claim against Karen Pannier for limiting his access to the law library and legal materials.

(Doc. 17).

Gakuba submitted three grievances at Vienna concerning access to the law library and legal materials. In the first grievance, dated September 16, 2019, Gakuba complained of inadequate time in the law library (Doc. 42-1, p. 10). Gakuba filed this as an emergency grievance (*Id*.). On September 20, 2019, the Chief Administrative Officer ("CAO") deemed it not an emergency and returned it to Gakuba with an instruction to "submit this grievance in the normal manner" (*Id*.). Gakuba, instead, appealed this decision to the Administrative Review Board ("ARB") (*Id*. at p. 22). On October 3, 2019, the ARB received Gakuba's grievance, but it was returned to him on October 8, 2019, because he failed to provide a counselor or grievance officer response (*Id*.).

Before the ARB issued its decision, on or around September 26, 2019, Gakuba resubmitted this first grievance as a nonemergency (*Id*. at p. 10). On October 4, 2019, the counselor responded noting:

> Per Law Librarian: The Vienna CC law library generally runs 1 to 2 sessions a day lasting 1.5 to 2 hours. Seating is limited to 11 per session. Offender Gakuba [ ] by providing proof of deadline on 9-27-19 has been put on

priority list and will be given priority scheduling in accordance with the law library scheduling policy.

(*Id*). On October 16, 2019, the Grievance Officer received Gakuba's first grievance and recommended that Gakuba's "grievance is MOOT [because] [Gakuba] provided proof of a court deadline to the librarian and offender is being scheduled in accordance with court deadline law library scheduling policy" (*Id*. at p. 9). On October 17, 2019, the CAO reviewed the Grievance Officer's findings and concurred (*Id*.). On October 22, 2019, Gakuba appealed the CAO's decision to the ARB (*Id*.). On October 28, 2019, the ARB received Gakuba's appeal (*Id*. at p. 8). The ARB returned the grievance three days later and explained that "[t]his is a request. Offender is not being denied access to library. Offender is requesting more time. Direct request to institutional staff" (*Id*.).

Gakuba also filed a grievance on October 2, 2019,[1] related to access to the law library (Doc. 83, p. 10). On January 6, 2020, the ARB denied this grievance stating that "[o]ffender has access to law library [and] [o]ffender has access to courts" (*Id*.).

In addition to the September 16 and October 2 grievances, Gakuba filed another grievance on October 16, 2019 (Doc. 42-1, p. 12). That grievance concerned the lack of library resources from July 2015 to January 2019 (*Id*.). This grievance was filed through the normal manner, but the counselor determined that it was outside jurisdiction of the facility (*Id*.). The grievance was then received by the ARB on October 28, 2019 (*Id*. at p. 11).

---

[1] This grievance was not within Defendant Pannier's Exhibit A for her motion for summary judgment (Doc. 42-1).

On October 31, 2019, the ARB returned Gakuba's October 16 grievance because it was not submitted in the timeframe outlined in Department Rule 504.810 (*Id.*).

## LEGAL STANDARD

Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004).

 "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809. Under *Pavey v. Conley*, "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-41 (7th Cir. 2008). Because

there are no disputed issues of fact, the Court finds that no evidentiary hearing is required in this case.

*Illinois Administrative Code*

The grievance procedure for inmates of the IDOC is laid out in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, *et seq*. If the inmate's grievance does not involve an emergency, the inmate must first file a grievance with the counselor within 60 days of the discovery of an incident. *Id.* § 504.810(a). The grievance form must contain factual details regarding what happened, when, where, and the name of each person who involved in the complaint. *Id.* at 504.810(c). While this provision does not preclude an offender from filing a grievance when the names of individuals are not known, he or she must include as much descriptive information about the person as possible. *Id.*

Grievances that are unable to be resolved through the counselor are then sent to the Grievance Officer. *Id.* at § 504.820(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." *Id.* at § 504.830(e). The Chief Administrative Officer then reviews the findings and recommendation of the Grievance Officer and advises the offender of his or her decision in writing. *Id.*

If the inmate is not satisfied with the response from the Chief Administrative Officer, he or she can file an appeal the decision to the Administrative Review Board. *Id.* at § 504.850(a). The appeal must be received by the ARB within 30 days after the date of the CAO's decision. *Id.* The ARB then must submit to the Director a written report of its

findings and recommendations. *Id.* at § 504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, when reasonably feasible under the circumstances." *Id.* at § 504.850(e).

DISCUSSION

As mentioned above, there are three grievances relevant to Gakuba's claims: (1) a grievance dated September 16, 2019, (2) a grievance dated October 2, 2019, and (3) a grievance dated October 16, 2019. The Court finds that none of these grievances were properly exhausted prior to Gakuba filing suit on October 4, 2019.

## I.      September 16, 2019 Grievance

Gakuba argues that he exhausted the September 16 grievance before the filing of his Amended Complaint on December 30, 2019 (Doc. 83, pp. 2-3). Unfortunately, however, Gakuba misses the point.

Exhaustion must occur *before* the suit is filed. *Ford*, 362 F.3d at 398. "[W]hen an inmate files an amended complaint that raises a *new claim* against a *new defendant*, the inmate may proceed if he exhausted his administrative remedies after filing his original complaint, but before he filed the amended complaint." *Egner v. Dennison*, 2021 WL 718297, at *4 (S.D. Ill. Feb. 24, 2021) (citing *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020)) (emphasis added). A district court is right to dismiss suit when "it's the same claim [ ] raised in [the] original pro se complaint . . . ." *Chambers*, 956 F.3d at 984-85 (emphasis added).

Here, Gakuba's Amended Complaint did not raise a *new claim* against a *new*

*defendant*. Gakuba's original pro se complaint included a claim against Defendant Pannier. *Gakuba v. Swells*, Case No. 19-cv-1081-SMY, (Doc. 1). In the original pro se complaint, Gakuba alleged that "according to Vienna librarian 'Pannier' only 1 visit (60-90 min)/week is all Gakuba can/should expect" (*Id*. at p. 14). Gakuba continued alleging that Pannier "conspired to limit Gakuba to 2-3 hrs/week in Vienna's 'law library' . . . ." (*Id*. at p. 18). Gakuba makes similar allegations against Defendant Pannier in the Amended Complaint in this suit:

- From September 4, 2019 to December 4, 2019, Gakuba's access to the Vienna "law library" has been a mere 12 days, averaging 90 minutes per visit per week.

- Vienna's "law library" [is] [the] size [of] 1 car garage, comprising 2 worktables (4' x 2') for 10 prisoners (1.5 x 1.5 ft work area per prisoner). 10 prisoners who must share 1 set of Nat'l Reporter Books . . . ; 1 Lexis-Nexis Touchscreen wall-mounted "kiosk" (regularly reboots, times-out after 2 min, inactivity); 1 6 yr. prison leased xerox copy machine (often jams, inferior copies) . . . .

- Thus, Gakuba has 9 min. (10 prisoners sharing 1 of everything) to use the books, Lexis-Nexis, copier . . . .

- Pannier limiting access to 90 min/week for use of 1 set of Nat'l Reporters, 1 Lexis-Nexis internet computer, 1 copier to be shared by 10 prisoners means Gakuba has 9 min x 3 = 27 min to use these scarce legal resources.

(Doc. 13).

The Court recognizes that Gakuba is proceeding in a different *case* than the one in which he filed his original pro se complaint against Defendant Pannier. But Gakuba never sought dismissal of his claims in Case No. 19-cv-1081-SMY. Instead, District Judge Staci Yandle severed Gakuba's claims into the current case because district courts have a duty

under Federal Rule of Civil Procedure 20 to prevent improperly joined parties from proceeding in the same case. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (noting that "[a] buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner").

Allowing Gakuba to exhaust administrative remedies based on the Court's severance of a case would be against Seventh Circuit precedent and likely would further encourage inmates to bring multiple unrelated claims against multiple defendants. *See Chambers*, 956 F.3d at 984-85. Inmates already bring multiple unrelated claims against multiple defendants in cases to save on court fees. Creating a special exception for exhausting administrative remedies when a case is severed would further encourage this practice and waste judicial resources.

Accordingly, Gakuba was required to exhaust his September 16 grievance against Defendant Pannier on or before October 4, 2019—when he filed his original pro se complaint in *Gakuba v. Swells*, Case No. 19-cv-1081-SMY. Gakuba not only failed to exhaust his September 16 grievance,[2] but even if he exhausted—exhaustion would have

---

[2] Contrary to Gakuba's assertion, the September 16 grievance was not considered on the merits. While the prison administration can refuse to hear a grievance if the inmate fails to properly utilize the grievance process, *see Dole*, 438 F.3d at 809, IDOC officials can excuse a prisoner's non-compliance and review the grievance on the merits. *See, e.g., Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004) (noting that an IDOC prisoner's grievance was untimely, but that IDOC officials nonetheless resolved the grievance on its merits). The ARB noted that the September 16 grievance was being returned because it was not a grievance, but a request (Doc. 42-1, p. 8). The grievance was also returned on a "Return of Grievance or Correspondence" form rather than a grievance response form, further demonstrating that it was not decided on the merits (*See id.* compare with Doc. 83, p. 10). Because the grievance was returned to Gakuba

taken place after he filed his original pro se complaint. [3]

## II.     October 2, 2019 Grievance

Gakuba appears to argue his October 2 grievance exhausts his administrative remedies (Doc. 83, pp. 2-3). Even assuming Gakuba properly exhausted his administrative remedies as to the October 2 grievance, however, Gakuba still failed to exhaust the grievance prior to filing suit on October 4, 2019. *See id*. at p. 10.

## III.     October 16, 2019 Grievance

Like the September 16 grievance, Gakuba not only failed to exhaust his October 16 grievance, but even if he exhausted — exhaustion would have took place *after* he filed his original pro se complaint.

The October 16 grievance also was not considered on the merits. The ARB noted that the October 16 grievance was being returned because it was not submitted in the timeframe outlined in Department Rule 504 (Doc. 42-1, p. 11). The grievance was also returned on a "Return of Grievance or Correspondence" form rather than a grievance response form, further demonstrating that it was not decided on the merits (*See id*. compare with Doc. 83, p. 10). Because the grievance was returned to Gakuba on procedural grounds and not decided on the merits, the Court finds that Gakuba failed to exhaust his administrative remedies as to the October 16 grievance.

---

on procedural grounds and not decided on the merits, the Court finds that Gakuba failed to exhaust his administrative remedies as to the September 16 grievance.

[3] Notably, Gakuba does not argue that he did not need to exhaust his administrative remedies because the grievance process is unconstitutional and futile.

Even if this could be construed as a decision on the merits, Gakuba still filed suit on October 4, 2019—nearly two weeks *before* he filed the October 16 grievance. Accordingly, Gakuba's October 16 grievance fails to exhaust his administrative remedies as to his claims against Defendant Pannier.

## IV.    Gakuba's Non-Grievance Argument

Gakuba appears to argue that the ARB's notation that the September 16 grievance was a non-grievance request makes the process unavailable for purposes of exhaustion. This argument is a loser because the ARB made this notation on October 31, 2019—27 days after Gakuba filed his suit (Doc. 42-1, p. 8).

## V.    Judicial or Equitable Estoppel

Gakuba also argues the Court should find the grievance process was unavailable to him under the theory of judicial or equitable estoppel (Doc. 83, p. 6). A party asserting equitable estoppel must demonstrate:

(1) misrepresentation or concealment of material facts;

(2) the other party's knowledge that the representations were false when made;

(3) the claimant's lack of knowledge of such falsity;

(4) the other party's expectation of the claimant's subsequent action;

(5) the claimant's reasonable, good faith, detrimental reliance on the misrepresentations; and

(6) the likelihood of prejudice to the claimant if the other party is not equitably estopped.

*Prestwick Cap. Mgmt., Ltd. v. Peregrine Fin. Grp., Inc.*, 727 F.3d 646, 663 (7th Cir. 2013) (citations omitted). Gakuba first fails to identify the party who made misrepresentations

or concealed material facts (Doc. 83, pp. 5-6). Besides failing to identify the party who made misrepresentations, Gakuba fails to demonstrate that the party had knowledge that the representations were false. If Gakuba is alleging that the Court's rulings in this case and in *Gakuba v. Rains*, 2020 WL 3316012 at \*4 (S.D. Ill. June 18, 2020), amount to equitable estoppel, then this argument fails as Gakuba must have relied on these rulings in a manner that caused him to not properly exhaust his administrative remedies. Gakuba not only fails to demonstrate this, but also his failure to properly exhaust cannot be attributed to the rulings in this case because he failed to exhaust prior to filing suit. Thus, Gakuba's equitable estoppel argument fails.

As for judicial estoppel, Defendant Pannier was not a party in *Rains*, 2020 WL 3316012. "The doctrine of judicial estoppel prevents a party from prevailing on an argument in an earlier matter and then relying on a contradictory argument to prevail in a subsequent matter." *Wells v. Coker,* 707 F.3d 756, 760 (7th Cir. 2013) (citations omitted); *see also Massuda v. Panda Exp., Inc.*, 759 F.3d 779, 783 (7th Cir. 2014) (acknowledging that "[j]udicial estoppel is designed to prevent parties from obtaining an unfair advantage by taking a present position that is inconsistent with one successfully taken in the past") (citing *Matter of Cassidy*, 892 F.2d 637, 641 (7th Cir. 1990)). Because Defendant Pannier was not a party in *Rains*, Gakuba's judicial estoppel argument fails as well.

## CONCLUSION

For the reasons stated above, Defendant Karin Pannier's Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies (Doc. 41) is **GRANTED**. The claims against Karin Pannier are **DISMISSED without prejudice** for

Gakuba's failure to exhaust his administrative remedies. Because there are no claims remaining, Warden Grissom is **DISMISSED without prejudice**.[4] The Clerk of Court shall close this case and enter judgment accordingly.

      **IT IS SO ORDERED.**

      **DATED:  March 26, 2021**

                                              **NANCY J. ROSENSTENGEL**
                                              **Chief U.S. District Judge**

---

[4] The Court added Warden Grissom and directed the Warden to respond to Gakuba's motion for preliminary injunction (Doc. 38). Warden Grissom timely responded to Gakuba's motion for preliminary injunction and testified in an affidavit that the equipment necessary for e-filing has now been installed at the prison, and the law library has received training for e-filing (Doc. 49-1, p. 1). Vienna began e-filing with this Court and the Central District of Illinois on June 5, 2020 (*Id*.). Thus, Gakuba's motion for preliminary injunction (Doc. 38) was denied as moot on June 9, 2020. (Doc. 50).